UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

FILED & ENTERED

JAN 07 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

In re:

Superior National Insurance Gr

Debtor(s).

Case No.: 1:00-bk-14099-GM

Chapter 11

**MEMORANDUM OF OPINION REGARDING ISSUE OF COURT APPROVAL REGARDING MOTION OF LITIGATION TRUSTEE, PURSUANT TO SECTIONS 3(B) AND 3(C) OF LITIGATION TRUST AGREEMENT AND SECTION 9.14 OF CHAPTER 11 PLAN TO APPROVE TRUST FINANCING  [DOCKET NUMBER 1513] [AS TO FUTURE FINANCING ONLY]**

Date: December 17, 2013
Time: 10:00
Courtroom: 303

This is on a motion by Marc Kirschner, the trustee (the "Trustee") of the Litigation Trust (as defined below) for an order: approving $2 million of financing and confirming that Court approval of further financing is not required.  At a hearing on December 17, 2013, the Court approved the financing (*see* Order entered December 20, 2013, Docket 1528) and took the issue of further court approval under submission.

Factual Background

SNTL Holdings Corp. ("SNTL") and its non-insurance subsidiaries (collectively with SNTL, the "Debtors") filed for chapter 11 relief on April 26, 2000 (#00-bk-14099-GM).  Also in 2000, SNTL's five insurance subsidiaries were seized and placed into conservatorships by state agencies in California and New York.

The Debtors' primary assets were over $1 billion of net operating loss carryforwards ("NOLs"). JPMorgan Chase Bank, N.A. ("Chase") held about $19 million of the Debtors' senior debt.

On June 21, 2002, the Debtors' Second Amended Chapter 11 Joint Plan of Reorganization as amended (the "Plan") was confirmed. Docket 709-1. The Plan was structured to realize value from the NOLs, and thus was shaped by the requirements of tax law. In essence, Chase acquired all equity in SNTL so that Chase could use the NOLs to offset its tax liability and then pay most of the value of those tax savings to a trust created for the benefit of the Debtors' stakeholders (the "Litigation Trust"), which was created pursuant to the Plan and a litigation trust agreement (the "Litigation Trust Agreement").

On May 12, 2013, the Litigation Trust filed a complaint (the "Complaint") alleging that Chase has had the benefit of over $2.2 billion in NOL's from the Debtors, which has resulted in tax savings to Chase of over $775 million, yet Chase has not paid anything to the Litigation Trust under the Earn Out Note (the "EON"). The Complaint seeks recovery for Breach of Fiduciary Duty, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Anticipatory Breach of Contract, Unjust Enrichment and to Reform the Plan

Chase brought a motion to dismiss the Complaint, which was heard by the Court on December 6, 2013 and was granted in part and denied in part. See Order and Memorandum of Opinion entered December 19, 2013. Docket 55 & 56 in adversary proceeding.

The Motion

The Litigation Trust needs additional funding in order to prosecute the Complaint. Declaration of Marc Kirschner filed in support of this motion ("Kirschner Dec.") ¶ 8. The Trustee obtained a commitment for $2 million of additional financing on very favorable terms from two of the largest beneficial holders of Litigation Trust interests: Centre Reinsurance (US) Limited ("Centre") and Stonehill Institutional Partners, L.P. ("Stonehill"). Stonehill and Centre collectively hold more than 50% of the Litigation Trust interests and are two of the four members of the oversight committee appointed to oversee the operation of the Litigation Trust (the "Oversight Committee"). Kirschner Dec. at ¶ 9; Motion at 11 n. 19. (The other two members of the Oversight Committee are Chase and Bank of New York Mellon).

The terms and conditions of the current financing approved by the Court are set forth on a term sheet (which is Exhibit A to the Kirschner Dec.) and summarized on pages 8-9 of the Motion. The significant terms include:

- secured by a first priority lien on virtually all assets and senior to other indebtedness,
- a term of 8 years,
- "paid in kind" interest added to the loan balance at 10% per annum for the first two years and 15% thereafter,
- Lenders will receive 3.5% of any recoveries by the Litigation Trust (capped at $4 million if received within the first year pursuant to a final settlement or non-appealable order).

The Trustee had argued that this financing has several below market terms and its terms are more favorable than those he has sought in earlier engagements, financing for litigation trusts can be difficult to obtain due to the speculative nature of the litigation

trust's assets, and the Trustee was unable find competing offers. Kirschner Dec. at ¶ 7. The terms of the financing were heavily negotiated by the Trustee and by Bank of New York Mellon, the only independent member of the Oversight Committee on this issue. The Trustee believed the proposed financing is in the best interests of the estate. *Id.* at ¶ 10.

The Trustee stated that he did not believe that the Court's approval was necessary under the Plan and Litigation Trust Agreement, but sought court approval out of an abundance of caution.  The Litigation Trust Agreement provides:

> <u>No Bankruptcy Court Approval Required for Actions</u>.  The Trustee shall not be required to seek or obtain any approval from the Bankruptcy Court for any actions the Trustee takes or does not take following the Effective Date except to the extent expressly required by the Plan, the Confirmation Order, or this Agreement, <u>provided</u> the actions taken or the omission to take such actions are in compliance with the provisions of the Plan, the Confirmation Order, and this Agreement.

Litigation Trust Agreement (Exhibit C to Kirschner Dec.) ¶ 3.b (emphasis in original). The Plan provides that:

> The Debtors (prior to Confirmation) or the Trustee (following the Effective Date of the Plan) reserve the right to seek and accept financing for the purpose of administering the Litigation Trust, financing the FHS Litigation or assisting in the feasibility of the Plan, in each case subject to Bankruptcy Court approval (based on a business judgment standard); provided, however, that prior to Confirmation, such financing shall only be sought by the Debtors with the consent of the Creditors' Committee and the SNTL Acquirer.  In order to attract such financing,

> the Debtors, or the Trustee, as the case may be, may grant to such hypothetical financier return rights on any recoveries by the Litigation Trust, an enhancement of the Litigation Trust Certificate position of such financier (to the extent such financier is a creditor), liens on Transferred Assets or such other enhancements as the Debtors or the Trustee (as the case may be) may deem appropriate.  Any such financing obtained prior to Confirmation may only be made on approval by the Bankruptcy Court.

Plan (Exhibit B to Kirschner Dec.) ¶ 9.14 (emphasis in the original).

The Trustee seeks a court order confirming that under the terms of the Litigation Trust Agreement and the Plan any future financings of the Litigation Trust do not require court approval.

Opposition

Chase did not oppose the current financing, but did file a limited opposition to the part of the motion seeking confirmation that court approval is not needed for any future financing obtained by the Litigation Trust.  Chase argues that the first sentence of Plan ¶ 9.14 unambiguously requires court approval of post-confirmation financing by the Trustee.  The Trustee's requested "clarification" -  that no court approval of future financings is required - really seeks modification of the Plan.  Since the Plan has been substantially consummated, it cannot be modified pursuant to Bankruptcy Code §1127

Reply

The Trustee argued that the proposed financing and the immediate entry of the order are unopposed and should be approved, which the Court has done.

The Plan provisions regarding post-Effective Date financing are ambiguous and suggest that no approval is necessary. Interpretation and clarification of plan provisions where a plan is silent or ambiguous, or to further equitable concerns, is permissible. *In re Daewoo Motor Am., Inc.,* 488 B.R. 418, 425 (C.D. Ca.; 2011). Chase is opposing this provision because it wishes to monitor the Litigation Trust's financing available to prosecute the litigation against Chase. If the Court is inclined to rule that there must be further court approval, then it should rule that future financing agreements may be submitted under seal and kept confidential from Chase.

Oral Argument

At the hearing on this motion, Chase reiterated its argument that the Plan is not ambiguous and the language of the Plan cannot be changed. Counsel also noted that under §9.12 of the Plan, Chase must report its operating costs (which include attorneys' fees) to the Trust, so the equities do not support allowing the Trust to conceal its attorneys' fees from Chase. Counsel stated that Chase's true concern is ensuring integrity of the Plan and preventing the parties from starting down a "slippery slope" of changing Plan provisions on the eve of extensive litigation over the Plan. Finally, the Trust does have an effective remedy that does not change the terms of the Plan: seeking to file subsequent motions for financing under seal.

Analysis

The Litigation Trust Agreement allows further financing without court approval, unless required by the Plan.

Paragraph 9.14 of the Plan is ambiguous on this point. The first sentence of that

paragraph explicitly requires court approval of post-confirmation financings by the Trustee.  The last sentence implicitly indicates that such post-confirmation approval is not required.

Given this ambiguity, the Court is more comfortable following the explicit requirement of court approval based on the business judgment standard for post-confirmation financing.  To address the Trustee's concerns over disclosing the limits of his litigation war chest to his adversary Chase, I will grant the Trustee's alternative request for an order providing that motions for approval of further financing may be filed under seal as to the amount sought and any strategic discussion of how that amount is arrived at or to be used.  That portion of the motion will be submitted only for *in camera* review and kept confidential from Chase.  However, since Chase is a major creditor and there are also other substantial creditors who have a right to know the terms of the financing (ie. Liens, priority repayment, interest rate, etc).

I do not believe that this will lead to an inequitable sharing of information.  The extent of disclosure that Chase must make to the Trust regarding attorneys' fees is not clear from the record, but it is clear that all information provided will concern past spending on attorneys' fees. Knowing what your adversary has spent on attorneys' fees is qualitatively different from knowing how much your adversary has available to spend in the future.  Having no other assets, the Trust's litigation budget is limited to any financing it receives; Chase's litigation budget is not so limited.

Ruling:

Court approval of future Litigation Trust financings will be required, but any motion for approval will be filed with a redacted copy available for public access and an

unredacted copy for the Court to review. The unredacted copy will be filed and kept under seal. The amount of the proposed financing and any strategic discussion of how that amount is arrived at or how the money is to be used may be redacted from the public copy. All other terms are not to be redacted. To the extent that a party-in-interest other than Chase seeks to have access to the unredacted agreement and/or motion, the Trustee is to make that available only after the party-in-interest has signed an appropriate confidentiality agreement. If a party-in-interest other than Chase objects to the terms of the proposed financing agreement, it may file an opposition, but said opposition is to be filed under seal if it deals with any of the information that has been redacted.

###

Date: January 7, 2014

Geraldine Mund
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): )_ **MEMORANDUM OF OPINION REGARDING ISSUE OF COURT APPROVAL REGARDING MOTION OF LITIGATION TRUSTEE, PURSUANT TO SECTIONS 3(B) AND 3(C) OF LITIGATION TRUST AGREEMENT AND SECTION 9.14 OF CHAPTER 11 PLAN TO APPROVE TRUST FINANCING**_____
was entered on the date indicated as ⒶEnteredⓐ on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Ⓑ Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

☒    Service information continued on attached page

**2.    SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐    Service information continued on attached page

**3.    TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an ⒶEnteredⓐ stamp, the party lodging the judgment or order will serve a complete copy bearing an ⒶEnteredⓐ stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐    Service information continued on attached page

Jeffrey E Bjork on behalf of Creditor Continental Casualty Company
jbjork@sidley.com

Louis J Cisz on behalf of Creditor St. Paul Fire & Marine Insurance Co
lcisz@nixonpeabody.com

Christina M Craige on behalf of Creditor Continental Casualty Company

Henry S David on behalf of Creditor Insurance Commissioner of California as liquidator for SNIC ccraige@sidley.com
hdavid@davidfirm.com, hdavid@davidfirm.com

David Gould on behalf of Mediator David Gould
dgould@gglawllp.com

Peter J Gurfein on behalf of Creditor Centre Insurance Company pgurfein@lgbfirm.com, marizaga@lgbfirm.com

Jonathan J Kim on behalf of Debtor Superior National Insurance Gr jkim@pszjlaw.com, jkim@pszjlaw.com

Michael S Kogan on behalf of Plaintiff Underwriters Insurance Company
mkogan@koganlawfirm.com

Michael S Lurey on behalf of Creditor Oversight Committee michael.lurey@lw.com, colleen.rico@lw.com

Craig Millet on behalf of Plaintiff American Re-Insurance Company cmillet@gibsondunn.com,
pcrawford@gibsondunn.com;cmillet@gibsondunn.com

Iain A W Nasatir on behalf of Debtor Superior National Insurance Gr jwashington@pszjlaw.com, jwashington@pszjlaw.com

Kimberly A Posin on behalf of Creditor Oversight Committee
kim.posin@lw.com

Christopher E Prince on behalf of Creditor Centre Insurance Company
cprince@sonnenschein.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov